| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Erica Loftis, Esq. (SBN 259286) <br> Adam P. Thursby, Esq. (SBN 318465) <br> GHIDOTTI \| BERGER LLP <br> 1920 Old Tustin Ave. <br> Santa Ana, CA 92705 <br> Ph: (949) 427-2010 <br> Fax: (949) 427-2732 <br> bknotifications@ghidottiberger.com <br><br> ☐ *Movant appearing without an attorney* <br> ☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - Los Angeles Division**

| In re: <br><br> Uday Sishta <br><br><br><br><br><br><br><br><br><br><br> Debtor(s). | CASE NO.: 2:21-bk-19463-SK <br> CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: February 2, 2022 <br> TIME: 8:30 A.M <br> COURTROOM: 1575 |

| **Movant:** U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES III TRUST, its successors and/or assignees |
|---|

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012         ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 1/7/2022

GHIDOTTI | BERGER LLP
Printed name of law firm (if applicable)

Erica Loftis-Pacheco , Esq.
Printed name of individual Movant or attorney for Movant

/s/ Erica Loftis Pacheco
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 2                          F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

**1. Movant is the:**

- ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.
- ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.
- ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.
- ☐ Other (*specify*):

**2. The Property at Issue (Property):**

   a. Address:

     *Street address*: 1539 Laurel Pl
     *Unit/suite number*:
     *City, state, zip code*: Menlo Park, California 94025

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit 1_____ ):

**3. Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*) 12/28/2021____ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____ .

   c. ☐ A plan, if any, was confirmed on (*date*) _____ .

**4. Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

     (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

     (2) ☒ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                      Page 3                                      **F 4001-1.RFS.RP.MOTION**

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit 4_____.

d. ☒ Other:

    Deed of Trust as Exhibit "1", Note as Exhibit "2", Assignment(s) as Exhibit "3", Grant Deed as Exhibit "5", and Multiple Bankruptcy Dismissals as Exhibit "6"; Court's Order to Show Cause issued in In re Smith 19-30064

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**    as Exhibit "7".

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*    Page 4    **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☒ ~~See attached continuation page for other relief requested.~~ Debtor has failed to file necessary documents within this bankruptcy which may result in dismissal of the case. Movant requests the Court retain jurisdiction and rule upon this Motion despite any dismissal that may be entered prior to given the pattern of bad faith present and relief requested.

Date: 1/7/2022

GHIDOTTI | BERGER LLP
_____
Printed name of law firm (*if applicable*)
Erica Loftis-Pacheco , Esq.
_____
Printed name of individual Movant or attorney for Movant

/s/ Erica Loftis Pacheco
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 5                    **F 4001-1.RFS.RP.MOTION**

## REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _Kathy Watson_ , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☐ Other (*specify*):    I am employed by SN Servicing Corporation which services the loan on the movant's behalf.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 2____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 1/3___.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address*: 1539 Laurel Pl
   *Unit/suite no.*:
   *City, state, zip code*: Menlo Park, California 94025

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   2007-006673 recorded on 01/16/2007 of the Official Records in the office of the County Recorder of San Mateo.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

    a. ☐ Debtor's principal residence      b. ☒ Other residence
    c. ☐ Multi-unit residential           d. ☐ Commercial
    e. ☐ Industrial                 f. ☐ Vacant land
    g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

    a. ☐ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☒ Other (*specify*):  Debtor acquired interest through an unauthorized Grant deed, see Exhibit "5"

    e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

    f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.

        The deed was recorded on (*date*) 10/06/2020____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 1____.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit 2____.

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit 3____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ |
| b. | Accrued interest: | $ | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[        ] | $[        ] | $[        ] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $ |

    h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

    a. Notice of default recorded on (*date*) 3/19/2014____ or ☐ none recorded.

    b. Notice of sale recorded on (*date*) 12/2/2021____ or ☐ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) 12/29/2021____ or ☐ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) 1/26/2022____ or ☐ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*            Page 7            **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b. Number of payments that have come due and were not made: _____. Total amount: $_____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

    An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e. **Calculation of equity/equity cushion in Property:**

    Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 8                                **F 4001-1.RFS.RP.MOTION**

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:     $
   (*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:     $
   (*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:     $[                    ]

TOTAL POSTPETITION DELINQUENCY:     $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☒ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (*specify*):  See Attached Continuation Pages.

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☒ Multiple bankruptcy cases affecting the Property include:

      1. Case name: Cynthia Smith
         Chapter: 7____   Case number: 18-30281_____
         Date dismissed: _____   Date discharged: 08/24/2018____   Date filed: 03/13/2018____
         Relief from stay regarding the Property ☐ was  ☒ was not  granted.

      2. Case name: Cynthia Smith
         Chapter: 11___   Case number: 19-30064_____
         Date dismissed: 1/30/2020____   Date discharged: _____   Date filed: 01/19/2019____
         Relief from stay regarding the Property ☐ was  ☒ was not  granted.

      3. Case name: Uday Sishta
         Chapter: 13___   Case number: 2:20-bk-18054-SK_____
         Date dismissed: 10/28/2020___   Date discharged: _____   Date filed: 09/02/2020____
         Relief from stay regarding the Property ☐ was  ☒ was not  granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 10                                    **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1-7-2022
Date

Kathy Watson
Printed name

Kathy Watson
Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1

**In re Uday Sishta, Case 2:21-bk-19463**

2
*Motion for Relief Continuation Page:*

3        Movant submits these additional facts and arguments in support of its Motion for Relief

4   From Stay with request for in rem relief pursuant to 11 U.S.C. 362(d)(4) based upon the "bad

5   faith" by Debtor as a scheme to delay and hinder Movant's foreclosure action.   Movant asserts

6   this Debtor is an active participant in the scheme as opposed to fellow victim based upon their

7   actions to date.  Movant states as follows:

8        I.        **SUMMARY OF FACTS**

9        **A. Loan Origination**

10        On or about December 29, 2006, original borrower, Cynthia Ann Smith ("Smith")

11   obtained a mortgage loan from People's Choice Home Loan, Inc. in the original amount of

12   $1,000,000.00 (the "Loan").  Repayment of the Loan was secured by a Deed of Trust (the "Deed

13   of Trust") in favor of MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.

14   ("MERS"), as nominee for People's Choice Home Loan, Inc., against the Subject Property,

15   which was recorded on January 16, 2007 in the Official Records of the County of San Mateo (the

16   "Official Records").  The Deed of Trust was assigned multiple time from 2012 to 2019 at which

17   time U.S. Bank gained beneficial interest.   U.S. Bank remains the beneficiary.

18        **B. Prior Modification Attempts**

19        On or about January 1, 2009, Smith entered into a Loan Modification Agreement with

20   prior servicer GMAC Mortgage, LLC ("GMAC").  Thereafter, on or about May 1, 2010, Smith

21   entered into another Loan Modification Agreement with GMAC.  On or about February 7, 2013,

22   Smith entered into a Loan Modification Agreement with then beneficiary FV-I in which

23   Movant's predecessor agreed to a new principal balance of $1,042,798.12 and graduated interest

24   schedule significantly reduced from the original rate of 7.25%.  On October 8, 2014, as a result

25   of Smith's default, a Notice of Default was recorded in the Official Records reflecting a past due

26   amount on the Loan of $54,636.41.  (RJN, Ex. 6.)

27        The loan remains due for the October 1, 2013 payment.  As of November 2021, the loan

28   balance is estimated at $1,514,805.04, over $500,000 more than the original loan balance.

29

1

**C. The Prior Bankruptcy Filings**

2      On August 10, 2016, Smith filed a chapter 13 bankruptcy petition in the U.S. Bankruptcy

3  Court for the Northern District of California and was assigned case number 3:16-bk-30883

4  ("First Bankruptcy").  The First Bankruptcy was a skeletal petition, in which Smith failed to file

5  the complete required documents.  As a result, on August 30, 2016, the First Bankruptcy was

6  dismissed.

7      On November 28, 2016, less than three months after dismissal of the First Bankruptcy,

8  Smith filed a chapter 13 bankruptcy petition in the petition in the U.S. Bankruptcy Court for the

9  Northern District of California and was assigned case number 3:16-bk-31270 ("Second

10  Bankruptcy").  Again, Smith's petition was skeletal and Smith failed to file the required

11  documentation required for a debtor in bankruptcy.  As a result, on December 8, 2016, the

12  Second Bankruptcy was dismissed.

13      On March 13, 2018, Smith filed a chapter 13 bankruptcy case in the U.S. Bankruptcy

14  Court for the Northern District of California and was assigned case number 3:18-bk-30281

15  ("Third Bankruptcy").  Notably, on the petition signed under penalty of perjury, Smith answered

16  "No" when asked whether she had filed for bankruptcy in the past eight years.  When Smith filed

17  her Schedules A-J, she listed the Loan as a secured debt on the Subject Property and did not state

18  that the debt was disputed or that she was unable to identify her creditor.  On May 10, 2018, the

19  bankruptcy court converted the case from one under chapter 13 to chapter 7 because of Smith's

20  ineligibility.  On August 24, 2018, Smith obtained standard discharge.

21      On January 19, 2019, Smith filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy

22  Court for the Northern District of California and was assigned case number 3:19-bk-30064

23  ("Fourth Bankruptcy").  Again, Smith failed to disclose the First Bankruptcy and the Second

24  Bankruptcy.  Notably, Smith again listed the Loan as a secured debt on the Subject Property and

25  listed the amount of the debt as "$1,031,804.20."  Smith did not state that the debt was disputed

26  nor that she had a claim against the beneficiary of the Deed of Trust or the servicer.  Smith also

27  failed to file the required monthly operating reports and the ones that were filed were inaccurate

28  and untimely.  In November 2019, Smith filed an *Amended Proposed Combined Plan of*

29  *Reorganization* reflecting that she proposed to sell the Subject Property, heavily encumbered by

various liens.  However, Smith delayed and never sold the Subject Property.  On January 9,

2020, the Bankruptcy Court noted:

> Ms. Smith's conduct in her prior cases and in this case suggests a startling lack of
> sincerity.  It also suggests that, while she understands and desires the significant benefits
> offered by the Bankruptcy Code, she wishes to avoid the significant responsibilities that
> go along with those benefits.  Ms. Smith has had four opportunities to reorganize her
> financial affairs.  Each time, she has engaged in conduct that calls her veracity into
> question.

(Court's issued Order to Show Cause, *In re Smith*, 3:19-bk-30064, DE 189)

On January 30, 2020, the Bankruptcy Court entered an Order Dismissing Smith's bankruptcy

case, 19-30064, with a 2-Year Bar to Refiling.

### D.  The State Court

In light of her 2-year prohibition on bankruptcy filings, Smith turned to a different venue

and immediately commenced a lawsuit on January 29, 2020 against U.S. Bank and Select

Portfolio Servicing, Inc. in San Mateo Superior Court, Case No. 21CIV00627 (the "Previous

Lawsuit").  Smith then added SN Servicing as a defendant to the Previous Lawsuit.  Smith was

able to obtain a temporary restraining order against foreclosure in the Previous Lawsuit at the

beginning of the COVID-19 Pandemic in March 2020, but did not obtain a preliminary

injunction.  Just prior to the hearing set for November 22, 2021 on several discovery motions

brought by SN Servicing, which requested monetary sanctions against Smith for her continued

failure to comply with her discovery obligations, Smith dismissed the Previous lawsuit without

prejudice on November 17, 2021.

Less than one month after dismissal of the Previous Lawsuit, Smith filed a second lawsuit

with application for temporary restraining order to prevent the foreclosure sale then scheduled

for December 29, 2021.  The court denied that application and no restraining order was issued.

### E.  The Involvement of this Debtor

During pendency of the Previous Lawsuit, on or about October 6, 2020, Smith

transferred a 50% interest in the Subject Property to third party debtor, Uday Sishta ("Debtor").

That same day, Debtor, who already had her then active Chapter 13 Bankruptcy in the Central

District of California (Case No. 2:20-bk-18054[1]), filed schedules in the Bankruptcy Court referencing her ownership interest in the Subject Property.  Debtor's prior case was dismissed and remains dismissed despite efforts to reopen the case.

After the state court failed to grant Smith's application for temporary restraining order and with Smith still being barred to bankruptcy filing herself, Debtor again filed bankruptcy to trigger an automatic stay.  The instant case, 2:21-bk-19463-SK, was filed on December 28, 2021 in skeletal fashion and clearly for the sole purpose to delay and hinder Movant's foreclosure sale.

## II.    <u>RELIEF UNDER 11 U.S.C. §362(d)(4) IS APPROPRIATE</u>:

Pursuant to 11 U.S.C. § 362(d)(4), Debtor's filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved the transfer of all or part ownership of the Property without the consent of Movant or court approval**.**  A scheme is an "intentional artful plot or plan to delay, hinder or defraud creditors." *Turnkey,* at 8, citing *Duncan & Forbes, Dev., Inc.,* 368 B.R. 27 (Bankr. C.D. Cal. 2006).  A scheme may be inferred from circumstantial evidence.  *Id.*  In the matter of *In re 4th St. E. Investors, Inc.,* the court found that there is sufficient evidence to support a scheme to hinder or delay a creditor's remedies where the grant deed shows the transfer is for little or no consideration, the transfer occurred or was made known to creditor when creditor was seeking to pursue remedies against the property, and there is no evidence showing a legitimate purpose for the transfer. 474 B.R. 709 (Bankr. C.D. Cal 2012).  The court further found that *In Rem* relief was appropriate despite the lack of debtor involvement because the scheme "involves the fact that filing the petition created an automatic stay".  *Id.,* at 711.

A fractional interest in the property was transferred to the Debtor via a grant deed recorded after Debtor's prior bankruptcy case had already commenced.   This transfer and filing was done without Creditor's knowledge, or consent, and was done while a foreclosure sale was imminent.  The interest was given without consideration and documented as "gift" upon the

---

[1] Interestingly, Smith was being assisted for a time in the Previous Lawsuit by a disbarred attorney named David Lilly.  Mr. Lilly's name appears on several proofs of service for documents filed Smith.  Upon review of documents filed in Debtor's Bankruptcy, Mr. Lilly's name *also* appears on proofs of service for documents purportedly executed by Debtor.  Mr. Lilly's presence in both matters is suspicious.

grant deed.  Debtor made no attempt to reorganize this debt in the prior filing and does not

attempt to do so now either.  The instant filing is at best skeletal and devoid of any information

as to how this debt will be repaid.  Debtor is not a borrower to the original loan obligation.  With

the current balance of over $1,500,000.00, no assumption of this debt would be in Debtor's or

her bankruptcy estate's interests nor is it believed she could afford to do so.

Debtor Given these facts, it can be inferred as the case law allows that a scheme to delay,

hinder, or defraud exists.  Thus, the Motion for Relief should be granted together with the

request in rem relief provided under 11 U.S.C. §362(d)(4).

# EXHIBIT "1"

**11:26am 01/16/07 DT  Fee: 58.00**
**Count of pages 18**
**Recorded in Official Records**
**County of San Mateo**
**Warren Slocum**
**Assessor-County Clerk-Recorder**

Recording Requested By:
PEOPLE'S CHOICE HOME LOAN,
INC.
Return To:
PEOPLE'S CHOICE HOME LOAN,
INC.
7515 IRVINE CENTER DR.
IRVINE, CA  92618

Prepared By:
People's Choice Home Loan,
Inc. 7515 Irvine Center
Drive, Irvine, CA  92618

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 29, 2006                        ,
together with all Riders to this document.
**(B) "Borrower"** is CYNTHIA A. SMITH, AN UNMARRIED WOMAN

Borrower's address is 1539 LAUREL PL, MENLO PARK                    , CA 94025
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

Lender is a CORPORATION
organized and existing under the laws of WYOMING

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

 -6A(CA) (0207)
Page 1 of 15                    Initials: 
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA 92618

(D) "Trustee" is F.C.I., A California Corporation, 8101 Kaiser Blvd., Suite #360 Anaheim Hills, CA 92808

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated December 29, 2006
The Note states that Borrower owes Lender ONE MILLION AND 00/100

Dollars

(U.S. $1,000,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _CAS_

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    COUNTY                         of                     SAN MATEO                   :
        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
'A'

Parcel ID Number:                                which currently has the address of
1539 LAUREL PL                                                              [Street]
menlo park                              [City], California 94025        [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: CAS

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: 

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



Initials: _____

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _CAS_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Cynthia A Smith_____ (Seal)
                                           CYNTHIA A SMITH                    -Borrower


_____          _____ (Seal)
                                                                          -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                       -Borrower

State of California
County of CALIFORNIA                                           } ss.

On DECEMBER 29, 2006        before me,   LEE HARRISON, NOTARY PUBLIC
                                                              personally appeared

CYNTHIA A SMITH

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

LEE HARRISON
COMM. #1604079
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. Sept. 3, 2009

# EXHIBIT "2"

## BALLOON NOTE
### (Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT M ATURITY. YOU M UST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO M AKE PAYM ENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT M ATURITY, YOU MAY HAVE TO PAY SOM E OR ALL OF THE CLOSING COSTS NORM ALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| | | |
|---|---|---|
| **12/29/2006** | **ROSEVILLE** | **CALIFORNIA** |
| [Date] | [City] | [State] |

**1539 LAUREL PL, menlo park, CALIFORNIA 94025**
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,000,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PEOPLE'S CHOICE HOME LOAN, INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on March 1st,2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on February 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.

**(B) AMOUNT OF MY INITIAL MONTHLY PAYMENTS**
My monthly payment will be in the amount of U.S. $6,396.72 .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If within Thirty-six (36) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.                                      .

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____(Seal)           _____(Seal)
CYNTHIA A SMITH        -Borrower                                                  -Borrower

_____(Seal)           _____(Seal)
                                -Borrower                                                  -Borrower

_____(Seal)           _____(Seal)
                                -Borrower                                                  -Borrower

_____(Seal)           _____(Seal)
                                -Borrower                                                  -Borrower

[Sign Original Only]

PAY TO THE ORDER OF

WITHOUT RECOURSE
PEOPLE'S CHOICE HOME LOAN, INC
A Wyoming Corporation

By

DANA LANTRY

Title:  Asst. Vice President

# EXHIBIT "3"

Recording Requested By:

SERVICELINK

Prepared By:  Audrey B Trumble
3001 Hackberry Rd
Irving, TX 75063
855-369-2410
When recorded mail to:

2:33 pm  01/25/19 AT Fee: 95.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Property Address:
1539 LAUREL PL
MENLO PARK, CA 94025
CA0-ADT  37253809    11/28/2018  BALBECWLS

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST** whose address is **7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| Original Borrower(s): | CYNTHIA A. SMITH, AN UNMARRIED WOMAN |
| Original Trustee: | F.C.I., A CALIFORNIA CORPORATION |
| Date of Deed of Trust: | 12/29/2006 |
| Original Loan Amount: | $1,000,000.00 |

Recorded in **San Mateo County, CA** on: 1/16/2007, book N/A, page N/A and instrument number 2007-006673

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
1|8|2019

MTGLQ INVESTORS, L.P.

By:

Andrea Rhinehardt, Vice President

State of **TX**, County of **Dallas**

On ____1|8|2019____, before me, ____**Natalie Flowers**____, a Notary Public, personally appeared **Andrea Rhinehardt, Vice President** of **MTGLQ INVESTORS, L.P.** personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.


Notary Public: ____**Natalie Flowers**____
My Commission Expires: ____11|29|2022____

Natalie Flowers
My Commission Expires
11/29/2022
ID No. 124227602

4:11 pm 06/26/18 AT Fee: 96.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

**PREPARED BY:**
Towd Point Master Funding Trust 2017-NP1
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10028
**RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:**
Meridian Asset Services
Attn: Doc Intake
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, **Towd Point Master Funding Trust 2017-NP1**, located at C/O
FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10028, ("ASSIGNOR/GRANTOR"),
hereby grants, conveys, assigns to: **MTGLQ INVESTORS, L.P.**, located at: 6011 Connection Drive, Irving, TX
75039, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **DEED OF TRUST**, dated **12/29/2006**
and executed by **CYNTHIA A SMITH, AN UNMARRIED WOMAN**, borrower(s) to: **F.C.I., A CALIFORNIA
CORPORATION** as original trustee and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION**, as original
lender, and certain instrument recorded **01/16/2007**, in Instrument **2007 006673**, in the Official Records of SAN
MATEO County, the State of California, given to secure a certain Promissory Note in the amount of **$1,000,000.00**
covering the property located at **1539 LAUREL PL, MENLO PARK, CA 94025.**
<u>Legal Description:</u>
See Exhibit A, Attached.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein.

Dated: May _____, 2018

**ASSIGNOR: Towd Point Master Funding Trust 2017-NP1**

**BY: FirstKey Mortgage, LLC, A Florida Limited Liability
Company, Not In Its Individual Capacity But Solely As
Administrator**

By: _____

**Name:  Jordan Epstein**

**Title:  Authorized Signatory**

State of:  NEW YORK
County of: NEW YORK

Before me, _____**Jose Chavez**_____, duly commissioned Notary Public, on this day personally appeared **Jordan
Epstein, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability Company, Not In Its
Individual Capacity But Solely As Administrator of Towd Point Master Funding Trust 2017-NP1**, known to
me (or proved to me on the oath of _____ or through _____) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and
consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this __25__ day of May, 2018.

_____
Notary Public's Signature

Printed Name: _____

My Commission Expires: _____

Property Address: **1539 LAUREL PL, MENLO PARK, CA 94025**

JOSE CHAVEZ
Notary Public, State of New York
Reg. No. 01CH6139294
Qualified in Westchester County
My Commission Expires Jan. 03, 2021

### Exhibit A: Legal Description

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF SAN MATEO, STATE OF
CALIFORNIA:   LOT 11, AS DESIGNATED ON THE MAP ENTITLED, LAUREL MANOR, MELO PARK,
SAN MATEO COUNTY, CALIFORNIA, WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF
THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON SEPTEMBER 28, 1950 IN BOOK 32 OF
MAPS AT PAGE 19.

10:58 am 10/31/17 AT Fee: 24.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor County Clerk Recorder

PREPARED BY:
TOWD POINT MASTER FUNDING TRUST
2014-NP1, U.S. BANK TRUST NATIONAL
ASSOCIATION, AS DELAWARE TRUSTEE
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10022
RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:
Westcor Land Title Insurance Co
600 W Germantown Ave, Suite 450
Plymouth Meeting, PA 19462

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, TOWD POINT MASTER FUNDING TRUST 2014-NP1, U.S.
BANK TRUST NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE, located at C/O FirstKey Mortgage,
LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNOR/GRANTOR"), hereby grants, conveys,
assigns to: TOWD POINT MASTER FUNDING TRUST 2017-NP1, located at: C/O FirstKey Mortgage, LLC,
900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNEE/GRANTEE"), all beneficial interest under that
certain DEED OF TRUST, dated 12/29/2006 and executed by CYNTHIA A SMITH, AN UNMARRIED
WOMAN, borrower(s) to: F.C.I., A CALIFORNIA CORPORATION as original trustee and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S CHOICE HOME
LOAN, INC., A WYOMING CORPORATION, as original lender, and certain instrument recorded 01/16/2007,
in Instrument 2007 006673, in the Official Records of SAN MATEO County, the State of California, given to
secure a certain Promissory Note in the amount of $1,000,000.00 covering the property located at 1539 LAUREL
PL, MENLO PARK, CA 94025.
<u>Legal Description:</u>
See Exhibit A, Attached.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein.

Dated: October ___26___, 2017

ASSIGNOR: TOWD POINT MASTER FUNDING TRUST 2014-NP1, U.S. BANK TRUST NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE

BY: FirstKey Mortgage, LLC, A Florida Limited Liability Company, its attorney-in-fact*

By: _____

Name:  Jordan Epstein

Title:  Authorized Signatory

*Power of Attorney Recorded in Westchester County, NY in

State of: NEW YORK
County of: NEW YORK

Before me, ___Maura C. Toglia___, duly commissioned Notary Public, on this day personally appeared **Jordan Epstein, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability Company, attorney-in-fact for TOWD POINT MASTER FUNDING TRUST 2014-NP1, U.S. BANK TRUST NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE,** known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this __26__ day of October, 2017. _____
                                                                          Notary Public's Signature

Printed Name: ___MAURA C. TOGLIA___
Notary Public, State of New York
Lic. #01TO6044869
My Commission Expires Qualified in Westchester County
My Commission Expires July 17, 20__

Property Address: 1539 LAUREL PL, MENLO PARK, CA 94025

### Exhibit A: Legal Description

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF SAN MATEO, STATE OF
CALIFORNIA:   LOT 11, AS DESIGNATED ON THE MAP ENTITLED, LAUREL MANOR, MELO PARK,
SAN MATEO COUNTY, CALIFORNIA, WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF
THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON SEPTEMBER 28, 1950 IN BOOK 32 OF
MAPS AT PAGE 19.

2:05 pm 09/09/16 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Requested and Prepared by:
Law Office of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA, 92606

When Recorded Mail To:
Specialized Loan Servicing, LLC
8742 Lucent Blvd.
Highlands Ranch, CO 80129

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned **hereby** grants, assigns, and transfers to:

**Towd Point Master Funding Trust 2014-NP1, U.S. Bank Trust National Association, as Delaware Trustee**

All beneficial interest under that certain Deed of Trust dated: 12/29/2006 executed by CYNTHIA A. SMITH, AN UNMARRIED WOMAN, as Trustor(s), and  PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION, as Lender, Mortgage Electronic Registration Systems, Inc., as Beneficiary, to F.C.I., A CALIFORNIA CORPORATION, as Trustee, and recorded on 1/16/2007 as Instrument Number 2007-006673    of Official Records, in the office of the County Recorder of San Mateo County, California and also all rights accrued or to accrue under said Deed of Trust.  Property Address: 1539 LAUREL PLACE, MENLO PARK, CALIFORNIA 94025

Dated: _March 23, 2015_

By:   **FV-I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC**

Aaron Saunders
**Authorized Signatory**

State of _Texas_

County of _COLLIN_

On _March 23, 2015_  before me, _Nicole Roseline Turner_____ Notary Public, personally appeared____ _Aaron Saunders_____ who proved to me on the basis of satisfactory evidence  to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of _Texas_____ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _N. Turner_____ (Seal)



NICOLE ROSELINE TURNER
Notary Public, State of Texas
My Commission Expires
June 10, 2017

9:56 am 04/13/12 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Recording requested by:

When recorded mail to:

Saxon Mortgage Services, Inc.
3701 Regent Blvd.
Irving, TX 75063

_Space above this line for recorders use_

## Assignment of Deed of Trust

For value received, the undersigned hereby grants, assigns, and transfers to

FV- I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated 12/29/2006 executed by CYNTHIA A. SMITH , AN UNMARRIED WOMAN, as Trustor(s) to F.C.I., A CALIFORNIA CORPORATION, as Trustee and recorded as Instrument No. 2007-006673, on 1/16/2007. of Official Records   in the office of the County Recorder of SAN MATEO County, CA, that secures the underlying promissory note.

Dated:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S
CHOICE HOME LOAN, INC., A WYOMING
CORPORATION, ITS SUCCESSORS AND
ASSIGNS

By: _James Myatt Grey_

State of: New York )
                     ) ss.
County of: Erie )

On _April 5th_ before me, _Lisa J. Costa_ a notary public, personally appeared _James Myatt Grey_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                (Seal)

LISA J. COSTA
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
My Commission Expires March 20, 20 14

7703

# EXHIBIT "4"



**FILED**

**DEC 29 2021**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

**Fill in this information to identify your case and this filing:**

Debtor 1    Uday            Sishta
        First Name     Middle Name     Last Name

Debtor 2
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: Central District of California

Case number   2:21-bk-19463-SK

☐ Check if this is an
amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**   1539 Laurel Place
Street address, if available, or other description

Menlo Park    CA    94502
City        State    ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:   APN

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$   2,000,000.00    $   1,000,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

One Half of Fee Simple

☐ Check if this is community property
(see instructions)

If you own or have more than one, list here:

**1.2.** _____
Street address, if available, or other description

_____

_____
City        State    ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$ _____    $ _____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ Check if this is community property
(see instructions)

Debtor 1    Uday        Sishta      Case number (if known) 2:21-bk-19463-SK

First Name    Middle Name    Last Name

---

**1.3.** _____
Street address, if available, or other description

_____

_____

City    State    ZIP Code

_____

County

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:** _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ **Check if this is community property** (see instructions)

**2.** Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. .................................................................... →    $_____

---

**Part 2:**   **Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3.** Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
☒ Yes

**3.1.** Make:    **Buick**

Model:    **Rivera**

Year:    **2000**

Approximate mileage:    **102000**

Other information:

_____

**Who has an interest in the property?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____ 1,100.00    $_____ 1,100.00

If you own or have more than one, describe here:

**3.2.** Make:    _____

Model:    _____

Year:    _____

Approximate mileage:    _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

Debtor 1    Uday                                Sishta                    Case number (if known) 2:21-bk-19463-SK
            First Name    Middle Name            Last Name

3.3.    Make:            _____        **Who has an interest in the property?** Check one.    Do not deduct secured claims or exemptions. Put
        Model:           _____        ☐ Debtor 1 only                                        the amount of any secured claims on *Schedule D:*
                                              ☐ Debtor 2 only                                        *Creditors Who Have Claims Secured by Property.*
        Year:            _____        ☐ Debtor 1 and Debtor 2 only                           **Current value of the**    **Current value of the**
        Approximate mileage: _____        ☐ At least one of the debtors and another              **entire property?**        **portion you own?**
        Other information:
                                              ☐ **Check if this is community property** (see
        ┌─────────────────────────┐              instructions)                                       $_____              $_____
        │                         │
        └─────────────────────────┘

3.4.    Make:            _____        **Who has an interest in the property?** Check one.    Do not deduct secured claims or exemptions. Put
        Model:           _____        ☐ Debtor 1 only                                        the amount of any secured claims on *Schedule D:*
                                              ☐ Debtor 2 only                                        *Creditors Who Have Claims Secured by Property.*
        Year:            _____        ☐ Debtor 1 and Debtor 2 only                           **Current value of the**    **Current value of the**
        Approximate mileage: _____        ☐ At least one of the debtors and another              **entire property?**        **portion you own?**
        Other information:
                                              ☐ **Check if this is community property** (see
        ┌─────────────────────────┐              instructions)                                       $_____              $_____
        │                         │
        └─────────────────────────┘

4.    **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
      *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories
      ☒ No
      ☐ Yes

4.1.    Make:            _____        **Who has an interest in the property?** Check one.    Do not deduct secured claims or exemptions. Put
        Model:           _____        ☐ Debtor 1 only                                        the amount of any secured claims on *Schedule D:*
                                              ☐ Debtor 2 only                                        *Creditors Who Have Claims Secured by Property.*
        Year:            _____        ☐ Debtor 1 and Debtor 2 only
        Other information:                    ☐ At least one of the debtors and another              **Current value of the**    **Current value of the**
                                                                                                     **entire property?**        **portion you own?**
        ┌─────────────────────────┐          ☐ **Check if this is community property** (see
        │                         │              instructions)                                       $_____              $_____
        └─────────────────────────┘

If you own or have more than one, list here:

4.2.    Make:            _____        **Who has an interest in the property?** Check one.    Do not deduct secured claims or exemptions. Put
        Model:           _____        ☐ Debtor 1 only                                        the amount of any secured claims on *Schedule D:*
                                              ☐ Debtor 2 only                                        *Creditors Who Have Claims Secured by Property.*
        Year:            _____        ☐ Debtor 1 and Debtor 2 only
        Other information:                    ☐ At least one of the debtors and another              **Current value of the**    **Current value of the**
                                                                                                     **entire property?**        **portion you own?**
        ┌─────────────────────────┐          ☐ **Check if this is community property** (see
        │                         │              instructions)                                       $_____              $_____
        └─────────────────────────┘

5.    **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages
      you have attached for Part 2. Write that number here** ....................................................➔    ┌──────────────┐
                                                                                                                      │ $_____  │
                                                                                                                      └──────────────┘

Debtor 1    Uday _____ Sishta _____    Case number *(if known)*  2:21-bk-19463-SK
           First Name    Middle Name    Last Name

## Part 3:    Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☑ No
   ☐ Yes. Describe.........                                    $_____

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☑ No
   ☐ Yes. Describe..........                                    $_____

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes. Describe.........                                    $_____

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No
   ☐ Yes. Describe..........                                    $_____

10. **Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ☑ No
   ☐ Yes. Describe..........                                    $_____

11. **Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☑ No
   ☐ Yes. Describe..........                                    $_____

12. **Jewelry**
   Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☑ No
   ☐ Yes. Describe...........                                    $_____

13. **Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☑ No
   ☐ Yes. Describe..........                                    $_____

14. **Any other personal and household items you did not already list, including any health aids you did not list**
   ☑ No
   ☐ Yes. Give specific information. .............                $_____

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ........................➜    $_____

| Debtor 1 | Uday | | Sishta | Case number (if known) | 2:21-bk-19463-SK |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**Part 4:**  **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

    ☐ No
    ☑ Yes .......................................................................................................................    Cash: ....................... $ _____150.00

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

    ☑ No
    ☐ Yes ....................

    Institution name:

    17.1. Checking account: _____ $ _____
    17.2. Checking account: _____ $ _____
    17.3. Savings account: _____ $ _____
    17.4. Savings account: _____ $ _____
    17.5. Certificates of deposit: _____ $ _____
    17.6. Other financial account: _____ $ _____
    17.7. Other financial account: _____ $ _____
    17.8. Other financial account: _____ $ _____
    17.9. Other financial account: _____ $ _____

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

    ☑ No
    ☐ Yes .................

    Institution or issuer name:

    _____ $ _____
    _____ $ _____
    _____ $ _____

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

    ☑ No
    ☐ Yes. Give specific information about them......................

    Name of entity:        % of ownership:

    _____ _____% $ _____
    _____ _____% $ _____
    _____ _____% $ _____

---

| Debtor 1 | Uday | | Sishta | Case number *(if known)* | 2:21-bk-19463-SK |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific
information about
them......................

Issuer name:

_____   $_____

_____   $_____

_____   $_____

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each
account separately.

| Type of account: | Institution name: | |
|---|---|---|
| 401(k) or similar plan: | _____ | $_____ |
| Pension plan: | _____ | $_____ |
| IRA: | _____ | $_____ |
| Retirement account: | _____ | $_____ |
| Keogh: | _____ | $_____ |
| Additional account: | _____ | $_____ |
| Additional account: | _____ | $_____ |

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☑ No
☐ Yes..........................

| | Institution name or individual: | |
|---|---|---|
| Electric: | _____ | $_____ |
| Gas: | _____ | $_____ |
| Heating oil: | _____ | $_____ |
| Security deposit on rental unit: | _____ | $_____ |
| Prepaid rent: | _____ | $_____ |
| Telephone: | _____ | $_____ |
| Water: | _____ | $_____ |
| Rented furniture: | _____ | $_____ |
| Other: | _____ | $_____ |

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes..........................

Issuer name and description:

_____   $_____

_____   $_____

_____   $_____

Debtor 1  Uday                              Sishta                     Case number (if known) 2:21-bk-19463-SK
          First Name    Middle Name    Last Name

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes .................................. Institution name and description. Separately file the records of any interests. 11 U.S.C. § 521(c):

_____ $_____

_____ $_____

_____ $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

☐ Yes. Give specific
information about them.... _____ $_____

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific
information about them.... _____ $_____

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific
information about them.... _____ $_____

**Money or property owed to you?**

**Current value of the
portion you own?**
Do not deduct secured
claims or exemptions.

28. **Tax refunds owed to you**

☑ No

☐ Yes. Give specific information
about them, including whether
you already filed the returns
and the tax years. .....................   Federal:  $_____
                                          State:    $_____
                                          Local:    $_____

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information.............   Alimony:              $_____
                                              Maintenance:          $_____
                                              Support:              $_____
                                              Divorce settlement:   $_____
                                              Property settlement:  $_____

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
Social Security benefits; unpaid loans you made to someone else

☑ No

☐ Yes. Give specific information.............   _____ $_____

| Debtor 1 | Uday | | Sishta | Case number (if known) | 2:21-bk-19463-SK |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No
☐ Yes. Name the insurance company
of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No
☐ Yes. Give specific information.............

$ _____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No
☐ Yes. Describe each claim. ....................

$ _____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No
☐ Yes. Describe each claim. ....................

$ _____

**35. Any financial assets you did not already list**

☑ No
☐ Yes. Give specific information.............

$ _____

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ..................................................................➔

$ _____

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**
☑ No. Go to Part 6.
☐ Yes. Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No
☐ Yes. Describe.......

$ _____

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No
☐ Yes. Describe.......

$ _____

---

| Debtor 1 | Uday | | Sishta | Case number (if known) 2:21-bk-19463-SK |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☐ No
☐ Yes. Describe....... $_____

**41. Inventory**

☐ No
☐ Yes. Describe....... $_____

**42. Interests in partnerships or joint ventures**

☐ No
☐ Yes. Describe.........

Name of entity:                                      % of ownership:

_____ ____% $_____
_____ ____% $_____
_____ ____% $_____

**43. Customer lists, mailing lists, or other compilations**

☐ No
☐ Yes. **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

☐ No
☐ Yes. Describe........ $_____

**44. Any business-related property you did not already list**

☐ No
☐ Yes. Give specific
information ......... $_____
$_____
$_____
$_____
$_____
$_____

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here ............................................................................→ $_____

---

**Part 6:    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

---

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes. Go to line 47.

**Current value of the
portion you own?**
Do not deduct secured claims
or exemptions.

**47. Farm animals**

*Examples*: Livestock, poultry, farm-raised fish

☐ No
☐ Yes........................... $_____

| Debtor 1 | Uday | | | Sishta | | Case number *(if known)* | 2:21-bk-19463-SK |
|---|---|---|---|---|---|---|---|
| | First Name | Middle Name | | Last Name | | | |

**48.** Crops—either growing or harvested

☐ No
☐ Yes. Give specific
    information. ............      $_____

**49.** Farm and fishing equipment, implements, machinery, fixtures, and tools of trade

☐ No
☐ Yes ..........................      $_____

**50.** Farm and fishing supplies, chemicals, and feed

☐ No
☐ Yes ..........................      $_____

**51.** Any farm- and commercial fishing-related property you did not already list

☐ No
☐ Yes. Give specific
    information. ............      $_____

**52.** Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
for Part 6. Write that number here .......................................................................................... ➔    $_____

---

**Part 7:**   **Describe All Property You Own or Have an Interest in That You Did Not List Above**

**53.** Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership

☑ No
☐ Yes. Give specific      $_____
    information. ............      $_____
         $_____

**54.** Add the dollar value of all of your entries from Part 7. Write that number here ................................ ➔    $_____

---

**Part 8:**   **List the Totals of Each Part of this Form**

**55.** Part 1: Total real estate, line 2 ......................................................................................... ➔    $_____

**56.** Part 2: Total vehicles, line 5      $_____

**57.** Part 3: Total personal and household items, line 15      $_____

**58.** Part 4: Total financial assets, line 36      $_____

**59.** Part 5: Total business-related property, line 45      $_____

**60.** Part 6: Total farm- and fishing-related property, line 52      $_____

**61.** Part 7: Total other property not listed, line 54      + $_____

**62.** Total personal property. Add lines 56 through 61. ..................    $_____    Copy personal property total ➔   + $_____

**63.** Total of all property on Schedule A/B. Add line 55 + line 62 .............................................    $_____

# EXHIBIT "5"

Recording Requested By:

*Uday Sishta*

When recorded mail document to:

*Cynthia Smith*

*1539 Laurel Pl*

*Menlo Park CA*

*94025*

**2020-107262**

3:22 pm 10/06/20 DE Fee: 20.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* $R 0 0 0 2 9 2 7 0 6 0 $ *

APN: 061-390-100-8

## GRANT DEED

Above Space for Recorder's Use Only

*Owner occupied*

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $ *Gift*

☐ computed on full value of property conveyed, or
☒ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area ☒ City of Menlo Park

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, _____

Cynthia Smith

hereby GRANT(s) to Uday Sishta 50 %- per cent 1539 Laurel Place Menlo Park CA 94025 *APN- 061-390-100*

the following described real property in the County of san mateo _____, State of California.

*Lot 45 Block lettered D as designated*

Dated: 08/31/2020 *9/1/2020*        *Cynthia Smith*

*on the map entitled map of CM Ires*
*io tract map of Mission tract in san Mateo*
*County California on June 21, 1907 in*        *Cynthia Smith*
*Book D of page 50 it copy eytend in book*   Printed Name(s) of Grantor(s)
*of maps at pg 55*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *San mateo* }
On *9/1/2020* _____ before me, *Michelle Musa* ~~Cynthia A Smith~~ *Smith*
_____, Notary Public, personally appeared *Cynthia A Smith* _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/their/her authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MICHELLE MUSA
Notary Public – California
San Mateo County
Commission # 2185573
My Comm. Expires Mar 31, 2021

Signature _____

MAIL TAX STATEMENTS TO PARTY SHOWN ON THE FOLLOWING LINE:   IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE.

Name _____    Street Address _____    City State & Zip _____

FLORANEXT

## EXHIBIT "ONE"

Lot 11, as designated on the map entitled, "LAUREL MANOR MENLO PARK, SAN MATEO COUNTY, CALIFORNIA", which map was filed in the office of the Recorder of the County of San Mateo, State of California on September 28, 1950 in Book 32 of Maps at page 19.

Joint Plant No:061-039-390-10A

Assessor's Parcel No: 061-390-100

# EXHIBIT "6"

Form ODSC7FI

## UNITED STATES BANKRUPTCY COURT
### Northern District of California (San Francisco)

| | |
|---|---|
| **In re:** | **Case Number: 18−30281 DM 7** |
| Cynthia A Smith | **Chapter: 7** |
| 1539 Laurel Pl | |
| Menlo Park, CA 94025 | |
| Debtor(s) | |
| **Debtor/Joint Debtor Social Security Number(s):** | |
| xxx−xx−3155 | |

## DISCHARGE OF DEBTOR AND FINAL DECREE

It appearing that the debtor(s) is/are entitled to a discharge, **IT IS ORDERED**:
The debtor(s) is/are granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

It further appears that the trustee, Andrea A. Wirum in the above−entitled case has filed a report of no distribution and said Trustee has performed all other and further duties required in the administration of said estate; accordingly, it is hereby

ORDERED that the chapter 7 case of the above−named debtor is closed; that the Trustee is discharged and relieved of said trust.

Dated: <u>8/24/18</u>

By the Court:

Dennis Montali
United States Bankruptcy Judge

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

Doc # 49

ODSC7FI continued

## EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**

Examples of debts that are not discharged are:

&#9830; debts that are domestic support obligations;

&#9830; debts for most student loans;

&#9830; debts for most taxes;

&#9830; debts that the bankruptcy court has decided or will decide are not discharged in this case;

&#9830; debts for most fines, penalties, forfeitures, or criminal restitution obligations;

&#9830; some debts which the debtors did not properly list;

&#9830; debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

&#9830; debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

**This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

ENTERED ON DOCKET
January 30, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: January 30, 2020**

**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 19-30064 HLB |
| | ) |
| CYNTHIA ANN SMITH, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER DISMISSING CASE WITH 2-YEAR BAR TO REFILING**

On January 30, 2020, the court held a hearing on the Order to Show Cause Why the Court Should Not Convert or Dismiss This Case with Prejudice or Appoint a Chapter 11 Trustee (Dkt. 189; the "OSC"). Appearances were as noted on the record. Upon due consideration of the pleadings and argument of the parties, and for the reasons stated on the record, the court **ORDERS** as follows:

(1) This case is **DISMISSED** with a 2-year bar to Ms. Cynthia Ann Smith refiling any bankruptcy case.

(2) Should Ms. Smith or anyone acting on her behalf file any case in violation of the 2-year bar, that case will be dismissed automatically without notice or hearing.

(3) Should Ms. Smith or someone acting on her behalf file any case in violation of the 2-year bar, the court

will automatically and without further notice or

hearing impose a $5,000 sanction against Ms. Smith.

**END OF ORDER**

## Court Service List

[None]

Form odspb−odspab/autodismi
Rev. 06/2017

# United States Bankruptcy Court
## Central District of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER AND NOTICE OF DISMISSAL FOR
## FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**
Uday Sishta

**BANKRUPTCY NO.**  2:20−bk−18054−SK

**CHAPTER**  13

**Last four digits of Social−Security or Individual Taxpayer−Identification (ITIN) No(s)., (if any):**  xxx−xx−6890
**Employer Tax−Identification (EIN) No(s).(if any):**  N/A
**Debtor Dismissal Date:** 10/28/20

**Address:**
616 St. Paul #643
Los Angeles, CA 90015

It appearing that the debtor(s) in the above−captioned case has failed to file all the documents required under FRBP 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with FRBP 1007(a)(5) or 3015(b),

IT IS HEREBY ORDERED THAT:

1)    The case is dismissed.

2)    The automatic stay is vacated.

3)    Any discharge entered in this case is vacated.

4)    The Court retains jurisdiction on all issues involving sanctions, any bar against being a debtor in bankruptcy, all issues arising under Bankruptcy Code §§ 105, 109(g), 110, 329, 349, and 362, and to any additional extent provided by law.

Dated: October 28, 2020

By the Court,

**Kathleen J. Campbell**
Clerk of Court

Form odspb−odspab/autodismi Rev. 06/2017

**23 / SMZ**

# EXHIBIT "7"

**Entered on Docket
January 09, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: January 9, 2020**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:                                ) Case No. 19-30064 HLB
                                      )
CYNTHIA ANN SMITH,                    ) Chapter 11
                                      )
                   Debtor.            )
_____)

**ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT CONVERT OR DISMISS THIS CASE WITH PREJUDICE OR APPOINT A CHAPTER 11 TRUSTEE**

On January 19, 2019, Debtor Cynthia Ann Smith commenced this case by filing a voluntary petition for relief under Chapter 11.[1]  A year later, there appears little hope that this this case will end with a confirmed plan.  Instead, and as detailed below, the court has lifted the automatic stay as to two of Ms. Smith's numerous creditors with claims secured by her only significant asset with any established value:  real property located at 1539 Laurel Place, Menlo Park, California (the "Property").  This virtually ensures that those creditors will foreclose their liens and force the sale of the Property, which also likely forecloses Ms. Smith's ability to reorganize her financial affairs under the Bankruptcy Code.  The absence

_____
[1] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code, aka the "Bankruptcy Code".

of any reasonable likelihood for reorganization, as well as Ms. Smith's failure to comply with many of her fiduciary obligations as a debtor,[2] leave this court with little choice other than to consider dismissal with prejudice, conversion, or the appointment of a Chapter 11 trustee.

The court may exercise its authority under section 105(a) to dismiss or convert a case, or to appoint a Chapter 11 trustee, whichever the court determines will best serve the interests of creditors and the estate, pursuant to section 1112(b)(1).  Kingsway Capital Partners LLC v. Sosa, 549 B.R. 897, 902-03 (N.D. Cal. 2016) (affirming bankruptcy court's authority to *sua sponte* dismiss or convert).  The court also has discretion under section 349(a) to dismiss a case with prejudice, i.e., to impose a bar to refiling.  In re Ellsworth, 455 B.R. 904, 922 (B.A.P. 9th Cir. 2011).

Section 1112(b)(4) sets forth a non-exhaustive list of what may constitute cause to dismiss or convert a case.  This list includes:  "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; . . . (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . . [and]

---

[2] Many of Ms. Smith's acts of malfeasance are described in a motion to dismiss filed by creditors WVJP 2017-1 LP and WV SPE 2017-1A LLC (together, "WV"), which is set for hearing on January 30, 2020 at 10:00 a.m.  In this order, the court means to offer additional grounds for the exercise of its authority and to put all parties on notice that the court will consider all alternatives available under section 1112:  dismissal, conversion, or appointment of a Chapter 11 trustee.

1  (J) failure to file a disclosure statement, or to file or

2  confirm a plan, within the time fixed by this title or by order

3  of the court[.]"  A review of the history of this case and

4  others filed by Ms. Smith in and after 2016 suggests ample

5  cause for the exercise of the court's discretion under the

6  foregoing authority.

7        The Property constitutes the most significant asset of

8  this estate.  Early in this case, Ms. Smith advised that she

9  intended to seek modification of a loan secured by a first deed

10  of trust on the Property[3] held by U.S. Bank Trust, N.A. ("U.S.

11  Bank"), and to negotiate a payoff to secured judgment creditor,

12  WV.[4]  To accomplish the latter goal, Ms. Smith hoped to utilize

13  funds from settlement of a pending personal injury action.  Ms.

14  Smith represented that she intended to file a plan and

15  disclosure statement by April 30, 2019.[5]

16        Rather than selling the Property to pay her remaining

17  creditors, Ms. Smith proposed to market an option to purchase

18  the Property.[6]  Ms. Smith represented that she believed she

19  could sell such an option, which would mature in "five to ten

20  years," for 10% of her home's fair market value, which she

21

22  ────────────────────

[3] Given that section 1123(b)(5) prohibits modification of claims secured by

23  real property that serves as a debtor's principal residence, as well as Ms.
Smith's admission that the Property serves as her principal residence (see

24  Dkt. 20 at p. 1), her intention to modify U.S. Bank's claim has always struck
the court as a dubious proposition.

25  [4] Debtor's Status Conference Statement filed March 1, 2019 (Dkt. 20; the

26  "March SCS"), at p. 4.

27  [5] Id. at pp. 4-5.

28  [6] Id. at p. 2.

1  stated as $2,500,000.[7]  In March 2019, the court approved the

2  retention of broker Tim Leingang for that limited purpose.[8]

3      While Ms. Smith apparently pursued those efforts,[9] WV filed

4  a motion for relief from stay on April 17, 2019.[10]  On May 9,

5  2019, the court convened a hearing on the First WV MRFS, as

6  well as a continued status conference.

7      Following the conclusion of those proceedings, the court

8  denied the First WV MFRS without prejudice[11] to its renewal if

9  Ms. Smith failed to comply with the court's concurrently-issued

10  order following status conference (the "May 9 Order").[12]  The

11  May 9 Order required Ms. Smith to file and serve a combined

12  form plan and disclosure statement by July 31, 2019, and to

13  confirm a plan no later than October 31, 2019.  The court

14  initially proposed July 1 and October 1 for these deadlines,

15  but agreed to the more generous deadlines at Ms. Smith's

16  request, notwithstanding her prior representation that she

17  could file a plan and disclosure statement by April 30.[13]

18      At the May 9 status conference, the court also advised Ms.

19  Smith that the monthly operating reports (the "MORs") she had

20  filed to date were untimely and wholly deficient, highlighting

21

22  [7] Id. at p. 4.

23  [8] Dkt. 43.

24  [9] Debtor's Status Conference Statement filed May 1, 2019 (Dkt. 60), at p. 2.

25  [10] Dkt. 50 (the "First WV MFRS").

26  [11] Dkt. 66.

27  [12] Dkt. 67.

28  [13] Dkt. 65 (audio of May 9, 2019 hearing).

the fact that she appeared to be using the wrong form, included
only one page of that form, and did not provide copies of bank
statements.  The court cautioned that timely, complete, and
accurate MORs must to be filed going forward and that any
failure to do so would result in an order to show cause such as
this one.[14]  The court reiterated that warning in its May 9
Order.[15]

On July 18, 2019, U.S. Bank filed a motion for relief from
stay.[16]  Accepting for purposes of argument Ms. Smith's
assertion that the Property was worth $2,500,000, U.S. Bank
alleged that it was encumbered by voluntary and involuntary
liens totaling more than $2,100,000, which meant that the
Property had little equity.  U.S. Bank also pointed out that
what equity might exist was being rapidly eroded by Ms. Smith's
failure to service U.S. Bank's debt, which required monthly
payments of $5,523.76.  Indeed, Ms. Smith appeared not to have
made a payment to U.S. Bank for more than five years prior to
the commencement of this case.  As of the filing of the U.S.
Bank MRFS, she also had not made any payments post-petition.
U.S. Bank set its MRFS for hearing on August 8, 2019.[17]

In a status conference statement filed one week later –
seven months into this case – Ms. Smith finally conceded that
her strategy for selling an option to purchase her Property had

---

[14] Id.

[15] Dkt. 67 at ¶ 6.

[16] Dkt. 81 (the "U.S. Bank MRFS").

[17] Dkt. 82.

failed, and that she would need to pursue the outright sale of the Property.[18]  She also admitted that resolution of her personal injury claims was taking longer than expected.  She then asked the court to extend her deadline to file a plan and disclosure statement by an additional 60 days.[19]

On August 1, 2019, the court held a continued status conference at which it expressed serious concerns about the direction of the case and again highlighted the fact that the MORs continued to be an utter mess.[20]  Among other things, it appeared that Ms. Smith was using non-debtor-in-possession accounts, that she had very limited cash on hand, and that the MORs included demonstrably incorrect information, such as a representation under oath that she had no unpaid bills even though she was not servicing the debt to U.S. Bank.

Ultimately, however, the court agreed to extend the deadline for Ms. Smith to file and serve a plan and disclosure statement.  Toward that end, it issued an order extending that deadline to August 23, 2019, but leaving in place the October 31, 2019 confirmation deadline.[21]  The court reiterated those deadlines in a separate order, which also established a deadline for expanding the engagement of Ms. Smith's real estate broker for the purpose of selling the Property in fee simple, and once again warned of the issuance of an order to

---

[18] Status Conference Statement filed July 24, 2019 (Dkt. 84) at p. 2.

[19] Dkt. 86.

[20] Dkt. 92 (audio of August 1, 2019 hearing).

[21] Dkt. 90.

show cause if Ms. Smith's MORs continued to be woefully
deficient.[22]  The court continued the hearing on the U.S. Bank
MRFS to September 5, 2019.[23]

On August 15, 2019, WV filed a second motion for relief
from stay, based upon the same grounds it asserted in support
of the First WV MRFS.[24]  WV set its Second MRFS for hearing on
September 5, 2019, to coincide with the continued hearing on
the U.S. Bank MRFS.[25]

On August 23, 2019, Ms. Smith timely filed an amended
application to employ Mr. Leingang[26] and a combined plan and
disclosure statement.[27]  The Initial Plan provided that Ms.
Smith would seek to sell the Property by December 31, 2019.[28]

On September 5, 2019, WV filed opposition to the Amended
Leingang Application.[29]  Later that day, the court held a
hearing on the U.S. Bank MFRS and the Second WV MFRS, at which
court continued the hearings on those motions to January 16,
2020, but ordered that, if Ms. Smith failed to meet certain
deadlines, the court would grant relief to U.S. Bank and/or WV
upon their filing and service of a declaration attesting to Ms.

---

[22] Dkt. 91.

[23] See Docket Text Order issued August 8, 2019.

[24] Dkt. 95 (the "Second WV MFRS").

[25] Dkt. 96.

[26] Dkt. 98 (the "Amended Leingang Application").

[27] Dkt. 99 (the "Initial Plan").

[28] Initial Plan at p. 3.

[29] Dkt. 116.

1  Smith's noncompliance.  Specifically, the MRFS Order required

2  Ms. Smith to:  (a) set the Amended Leingang Application for

3  hearing on October 3, 2019; (b) file a reply in further support

4  of the Amended Leingang Application by September 25, 2019; (c)

5  confirm a plan by October 31, 2019; and (d) file a motion to

6  sell the Property no later than December 31, 2019.[30]

7      On September 19, 2019, the court held a continued status

8  conference and a hearing to consider tentative approval of the

9  Initial Plan.[31]  Despite serious concerns, and over the

10 objections of WV and U.S. Bank, the court tentatively approved

11 the Initial Plan and yet again extended the deadline to confirm

12 a plan, this time to November 8, 2019.[32]  The court once more

13 admonished Ms. Smith for the continuing deficiencies in her

14 MORs, noting that they continued to be inaccurate and

15 incomplete in that Ms. Smith's monthly calculations of cash on

16 hand did not add up, and that she still appeared to be using

17 non-debtor-in-possession accounts, for which she had failed to

18 provide records.[33]

19     On October 29, 2019, WV filed its motion to dismiss,[34]

20 citing gross mismanagement of the estate, failure to comply

21 with court orders, and failure to comply with reporting

22 requirements.  Attached as Exhibit A to the WV Motion to

23 _____

24 [30] Dkt. 118 (the "MFRS Order").

25 [31] Dkt. 127 (audio of September 19, 2019 hearing).

26 [32] Docket Text Order entered September 19, 2019.

27 [33] Id.

28 [34] Dkt. 148 (the "WV Motion to Dismiss").

Dismiss is a detailed list of all omissions and other shortcomings found in Ms. Smith's MORs over the course of this case.  On November 18, 2019, Ms. Smith opposed the WV Motion to Dismiss.[35]  Ms. Smith did not deny WV's allegations with respect to her MORs, stating only that she prepared the MORs to the best of her ability.[36]

Meanwhile, on November 4, 2019, the court convened a hearing to consider confirmation of the Initial Plan.  The court concluded that the Initial Plan could not be confirmed for a variety of reasons, but agreed to a further extension of the confirmation deadline, this time to December 3, 2019.[37]

On November 21, 2019, the court entered an order continuing the confirmation hearing, as well as the hearing on the on the WV Motion to Dismiss, to January 30, 2020.[38]  That order also further extended the confirmation deadline to January 30, 2020.  On November 25, 2019, Ms. Smith filed an amended combined plan and disclosure statement.[39]  Like the Initial Plan, the Amended Plan provided that Ms. Smith would seek to sell the Property by December 31, 2019.[40]

On December 15, 2019, Ms. Smith filed a motion to extend the deadline to file a motion to sell the Property from

---

[35] Dkt. 156.

[36] Id. at p. 2.

[37] Docket Text Order issued November 6, 2019.

[38] Dkt. 160.

[39] Dkt. 161 (the "Amended Plan").

[40] Id. at 5.

December 31, 2019 to April 30, 2020, in exchange for monthly adequate protection payments of $3,000 to U.S. Bank and $1,000 to WV.[41]  The court convened an expedited hearing on the Motion to Extend.[42]

At that hearing,[43] the court declined to grant the Motion to Extend on two principal grounds.  First, Ms. Smith had chosen the December 31 deadline and she, not her creditors, had to bear the consequences of that decision.  The court also pointed out that Ms. Smith's complaint that Fall had proven to be a "slow selling season" should not have come as a surprise to her given that she and Mr. Leingang decided to market the Property in late October.  Second, the court observed that it had received no competent evidence that Ms. Smith would be able to make the proposed adequate protection payments, given the state of her MORs.  In the court's view, all of Ms. Smith's excuses appeared aimed at more delay and indicated that she was not taking the reorganization process seriously.  The court entered an order later that day denying the Motion to Extend.[44]

On December 31, rather than filing a motion to sell the Property, Ms. Smith filed a motion to reconsider the Order Denying Extension which she attempted to set for hearing on January 16, 2020.[45]  The court entered an order later that day

---

[41] Dkt. 171 (the "Motion to Extend").

[42] Dkt. 173.

[43] Dkt. 177 (audio of December 19, 2019 hearing).

[44] Dkt. 176 (the "Order Denying Extension").

[45] Dkt. 181 (the "Motion to Reconsider").

vacating the January 16 hearing on the Motion to Reconsider due to Ms. Smith's failure to serve and notice it properly.[46]

On the same day she filed her Motion to Reconsider, Ms. Smith filed her November 2019 MOR and, in her Motion to Reconsider, she relied on the November MOR as evidence of her ability to make the proposed adequate protection payments.[47] Unfortunately, the November MOR suffers from many of the same deficiencies the court has previously highlighted for Ms. Smith:  (a) it was filed late; (b) it does not include any bank statement(s), but instead includes what appear to be two pages of transactions for an unidentified checking account (not clear whether it is a debtor-in-possession account); (c) it states that Ms. Smith has $15,717 in cash on hand (but the print-out reflects an ending balance of only $1.01); and (d) it states that Ms. Smith had cash receipts of $8,900 (but the print-out reflects deposits of only $2,424).  In short, Ms. Smith's November MOR offers no additional clarity into her financial situation as a Chapter 11 debtor.

On January 2, 2020, WV filed a declaration attesting to Ms. Smith's failure to comply with the MFRS Order, particularly, her failure to have filed a motion to sell the Property by December 31, 2019.[48]  The court thereafter entered an order granting WV relief from stay.[49]

---

[46] Dkt. 183.  As of the date of this order, Ms. Smith has not re-noticed the Motion to Reconsider.

[47] Dkt. 179 (the "November MOR").

[48] Dkt. 184.

[49] Dkt. 185.

1    That same day, the court entered an order vacating the

2  January 30 confirmation hearing, due to the fact that the

3  Amended Plan was dependent on filing of a motion to sell the

4  Property by December 31, 2019, and no such motion had been

5  filed, meaning the court could not confirm the Amended Plan.[50]

6  The court did not extend the January 30 confirmation deadline.

7    On January 7, 2020, U.S. Bank filed its own declaration

8  attesting to Ms. Smith's failure to comply with the MFRS

9  Order.[51]  The same day, the court entered an order granting U.S.

10 Bank relief from stay.[52]

11    Now that both WV and U.S. Bank are in a position to

12 foreclose on the Property, nullifying Ms. Smith's expressed

13 reason for filing bankruptcy, it appears that reorganization is

14 highly unlikely, if not impossible.  It is certainly not

15 possible for Ms. Smith to achieve confirmation prior to the

16 January 30 deadline that remains in effect.  Moreover, as

17 detailed above, Ms. Smith has repeatedly requested – and

18 received – generous extensions of time to propose and confirm

19 what should have been a fairly simple reorganization strategy.

20 Despite having had ample time and opportunity to restructure

21 her financial affairs, she has failed to do so.

22    Still further, she has utterly failed to fulfill the

23 reporting obligations she voluntarily assumed as a Chapter 11

24 debtor, despite repeated admonitions from this court.  In

25  _____

26  [50] Docket Text Order issued January 2, 2020.

27  [51] Dkt. 187.

28  [52] Dkt. 188.

opposing the WV Motion to Dismiss, Ms. Smith essentially
conceded this point.  And her November 2019 MOR only appears to
confirm that she remains unwilling or unable to comply with the
reporting obligations required by the Bankruptcy Code.

All of these problems are particularly troubling because
this is Ms. Smith's fourth bankruptcy case since November 2016,
which means she should be familiar with the bankruptcy process
and the obligation of absolute transparency assumed by debtors
under the Bankruptcy Code.  Unfortunately, Ms. Smith's prior
cases demonstrate the same lack of diligence and lack of candor
that appears to have doomed this case.

Ms. Smith filed her first case under Chapter 13 on August
10, 2016.[53]  The court dismissed that case on August 30, 2016
because Ms. Smith failed to file schedules of her assets and
liabilities, a statement of financial affairs, or most of the
other documents required by section 521 and Rule 1007 of the
Federal Rules of Bankruptcy Procedure.  In addition, the social
security number disclosed by Ms. Smith in connection with her
first case differs from that disclosed in connection with this
case by one digit.

Ms. Smith filed her second Chapter 13 case on November 28,
2016.[54]  The court dismissed it on December 8, 2016 because Ms.
Smith failed to file a list of her creditors, which left the
court unable to serve any of her creditors with notice of the
commencement of that case.  As with her first case, the social

---

[53] Case No. 16-30883.

[54] Case No. 16-31270.

13

security number disclosed by Ms. Smith in connection with her second case differs from that disclosed in her current case by one digit.

Ms. Smith filed her third case under Chapter 13 on March 13, 2018,[55] using the social security number she disclosed in connection with her current case. On May 11, 2018, the court converted the case to one under Chapter 7, ruling on its *sua sponte* order to show cause. In converting the case, the court found Ms. Smith ineligible for relief under Chapter 13, although it did not explain why. Based on the schedules Ms. Smith filed in the case (something she did not do until after conversion), it appears that her noncontingent, liquidated, undisputed debts totaled $2,345,394.33, which far exceeded the limit on such debts imposed by section 109(e), and which rendered her ineligible for relief under Chapter 13. In any event, Ms. Smith received a discharge under Chapter 7 on August 24, 2018.[56]

When Ms. Smith filed her current case in January 2019, she did not disclose the first two of her three prior cases. Instead, she falsely attested twice[57] – both times under penalty of perjury – that her only prior case was the one she filed in 2018.

---

[55] Case No. 18-30281.

[56] The recency of Ms. Smith's last case, and the fact that she received a Chapter 7 discharge in that case, means that she is not currently eligible to receive another such discharge. See 11 U.S.C. §§ 727(a)(8) & 1141(d)(3)(C).

[57] Dkts. 1 and 28 (original and amended Petition, respectively).

Ms. Smith's conduct in her prior cases and in this case suggests a startling lack of sincerity.  It also suggests that, while she understands and desires the significant benefits offered by the Bankruptcy Code, she wishes to avoid the significant responsibilities that go along with those benefits. Ms. Smith has had four opportunities to reorganize her financial affairs.  Each time, she has engaged in conduct that calls her veracity into question.  Given her track record, the court must consider dismissal with prejudice as one of the possible alternatives under sections 105(a), section 349, and section 1112, and the court believes a two-year bar to refiling might be appropriate.

For the foregoing reasons, the court **ORDERS** as follows:

(1)  On **January 30, 2020 at 10:00 a.m.**, at 450 Golden Gate Avenue, 16th Floor, Courtroom 19, San Francisco, California 94102, Ms. Smith shall appear and show cause why the court should not dismiss this case with a two-year bar to refiling; convert this case to Chapter 7; or appoint a Chapter 11 trustee.  Should the court dismiss the case with prejudice, and should Ms. Smith file a bankruptcy case in violation of the bar, the court would impose the following sanctions: (1) automatic dismissal of the violative case; and (2) automatic imposition of $5,000 sanction against Ms. Smith.

(2)  Ms. Smith shall file and serve a written response to this order on or before **January 23, 2020**.

(3) If Ms. Smith fails to file a timely response or fails to appear at the January 30 hearing, the court will deem her unopposed to dismissal with prejudice, conversion, or appointment of a trustee; will vacate the January 30 hearing; and will enter whatever order it deems appropriate and in the best interests of creditors.

**\*\*END OF ORDER\*\***

16

## Court Service List

[None]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
   1920 Old Tustin Avenue, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 1/7/2022____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

   Kathy Dockery, EFiling@LATrustee.com

   United States Trustee, ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 1/7/2022____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

   Uday Sishta, 616 St. Paul Ave., #643, Los Angeles, CA 90015

   Cynthia Ann Smith, 1539 Laurel Pl. Menlo Park, CA 94025

   Honorable Sandra R. Klein, United States Bankruptcy Court, 255 E. Temple St., Ste. 1582, Los Angeles, CA 90012

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/7/2022 | Erica Loftis Pacheco | /s/Erica Loftis Pacheco |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.